FILED
UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

APR 19 2023

MITCHELL R. ELFERS
CLERK OF COURT

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
IN THE MATTER OF THE SEARCH OF PREMISES LOCATED AT 9817 ACER AVENUE EL PASO TEXAS 79925 TO INCLUDE ALL BUILDINGS AND VEHICLES

Case No. 23-825 MR

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See attachment A.

located in the _____ District of ___New Mexico___, there is now concealed *(identify the person or describe the property to be seized)*:
See attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1201(a)(1) | Kidnapping |
| 18 U.S.C. § 2421(a) | Transportation for Illegal Sexual Activity |

The application is based on these facts:
See attachment C.

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Armida Maria Macmanus, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Sworn telephonically and signed digitally *(specify reliable electronic means)*.

Date: 19 April 2023

*Judge's signature*

City and state: Las Cruces, New Mexico

U.S. Magistrate Judge
*Printed name and title*

DAMIAN L. MARTINEZ

## ATTACHMENT A

### SUBJECT PREMISES

The Subject Premises (PREMISES) is located at 9817 Acer Avenue, El Paso, Texas 79925, and consists of a one-story brick residence, exterior property, and outbuildings (shed). The residence is tan in color. The address number (9817) to the residence is located on the driveway. The outbuilding (shed) is located within the property behind the residence in the fenced backyard. The following photographs show a view of the PREMISES to include aerial Microsoft Bing maps photos and close photos of the front of PREMISES. All outbuildings, including the shed, and vehicles located on the property constitute the PREMISES.

Microsoft Bing map wide aerial overview (PREMISES marked on map)



Microsoft Bing map close overview of the front of the PREMISES:



9817 Acer Avenue El Paso Texas 79925 front of residence on the PREMISES



9817 Acer Avenue El Paso Texas 79925 front of residence – close-up of car port- on the PREMISES



## ATTACHMENT B

## ITEMS TO BE SEIZED

All evidence of violations of 18 U.S.C. § 1201(a)(1) and 18 U.S.C. § 2421(a), including the following items:

1. All written and typed correspondence from Jeffrey Steven Clay sent via U.S. Postal Service mail or any private courier company from the Dona Ana County Detention Center in Las Cruces, New Mexico to Alma Patricia Peinado, who resides at 9817 Acer Avenue, El Paso, Texas 79925, from November 10, 2022 to April 19, 2023, relating to:

    a. The commission, facilitation, promotion, or concealment of any of the crimes enumerated in the warrant and affidavit;

    b. The state of mind which establishes criminal intent by Jeffrey Steven Clay engaging in any of the crimes enumerated in the warrant and affidavit.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF PREMISES LOCATED AT 9817 ACER AVE EL PASO TEXAS 79925 TO INCLUDE ALL BUILDINGS AND VEHICLES | Case No. _____ |

### ATTACHMENT C
### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A WARRANT TO SEARCH AND SEIZE

I, Armida Maria Macmanus, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. This affidavit is made in support of an application for a search warrant authorizing the search of premises located at 9817 Acer Avenue, El Paso, Texas 79925 (hereinafter the "PREMISES"), more specifically described in Attachment A, as well as the seizure of the items described in Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since November 2005. Prior to the FBI, I was employed as a United States Border Patrol (USBP) Agent from 2001 to 2005. I am currently assigned to the Albuquerque Field Office, Las Cruces Resident Agency. During my career, I have investigated violations of federal law to include violent crimes (including cases with victims), drug trafficking offenses, and white-collar crimes including public corruption, and I have assisted in investigations of crimes against children. As a federal agent, I am authorized to investigate violations of laws of the United States, and as a law enforcement officer I am authorized to execute warrants issued under the authority of the United States. During my tenure with the FBI, I have received formal and

1

informal training in conducting investigations of violent crimes, financial crimes, and narcotics investigations, among others. I have utilized investigative techniques including, but not limited to, physical surveillance, source interviews, toll record analysis, financial analysis, and execution of search warrants.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show that there is probable cause for the requested warrant and does not set forth all my knowledge about this matter.

4. I am familiar with the facts set forth herein based on my personal observations or information provided to me by other law enforcement officers participating in this investigation. I am also familiar with the facts set forth based on my review of documents, reports, surveillance videos and photographs. As the purpose of this affidavit is only to establish probable cause to support the issuance of a search and seizure warrant of the PREMISES, I have not set forth every fact known concerning this investigation. Where statements of others are set forth in this affidavit, they are set forth in substance and in part. In addition, the events described in this affidavit occurred on or about the dates and times provided herein.

## PROBABLE CAUSE

5. I am the case agent investigating Jeffrey Steven Clay. My federal investigation began in approximately June 2022 when I was contacted by Detective Iliana Morales who is employed by the Dona Ana County Sheriff's Office (DASO) regarding a possible kidnapping that took place in 2021. Through the course of the investigation, I learned the following: on August 4, 2021, a woman identified as "Jane Doe" was out at a bar in El Paso, Texas, with her significant other. After a brief verbal argument with her significant other, Jane Doe left the bar to look for

a ride to her friend's house. A man—later identified as Jeffrey Steven Clay— in a vehicle pulled up and asked Jane Doe if she wanted a ride. Clay agreed to take Jane Doe to her friend's house on a specific street in El Paso, Texas. Jane Doe got in the car with Clay, who told her his name was Jeffrey. Then, rather than driving Jane Doe to the address he stated he was going to, Clay drove Jane Doe to his residence in Anthony, New Mexico. Clay never asked Jane Doe if she wanted to go to his residence, and Jane Doe never agreed to go anywhere with Clay besides her friend's house in El Paso.

6. Once at Clay's residence, Clay tried to kiss Jane Doe, and Jane Doe rebuffed his kiss. Clay then slapped Jane Doe in the face, handcuffed her, and took her to a bedroom. Once in the bedroom, Clay began kissing Jane Doe on her face and body while she remained handcuffed. Jane Doe repeatedly asked Clay to stop and to remove the handcuffs, but Clay refused and tightened the handcuffs. While on top of Jane Doe, Clay punched Jane Doe in the face. Clay then vaginally and anally penetrated Jane Doe with his fingers and penis, while she was handcuffed and against her will. Clay then put his penis in Jane Doe's mouth and ejaculated. Jane Doe was crying throughout the sexual assault, and, at times, tried to fight Clay off her. After the sexual assault, Jane Doe asked Clay if he was going to kill her.

7. Clay then drove Jane Doe from his house in Anthony, New Mexico, back to El Paso, Texas. On the way back, Clay told Jane Doe, "you do know that I'm a cop?" Clay went on to say he could charge her for assaulting a police officer.[1] While at a stop light, Jane Doe saw an opportunity to escape, so Jane Doe jumped out of Clay's vehicle and ran to a nearby convenience store where Jane Doe and the store clerk called 911.

---

[1] According to Jane Doe, Clay had scratches on his neck from Jane Doe when she tried to stop Clay during the sexual assault.

3

8. I listened to the 911 call and heard Jane Doe, who was sobbing and distraught, tell the emergency dispatcher that she had been kidnapped and raped. When EPPD officers arrived on scene, they observed marks on Jane Doe's wrists consistent with being handcuffed, as Jane Doe described.

9. A SANE examination was conducted, which revealed that Jane Doe had tears to her vaginal walls and anus, consistent with the sexual abuse she described. During the SANE examination, the examiner took swabs for DNA left on Jane Doe by her attacker. A sample of Clay's DNA was obtained with a State of New Mexico District Court search warrant. The DNA taken from Jane Doe during the SANE exam and Clay's sample DNA were sent to a crime laboratory for comparison. The details listed on the comparison report revealed a probability that Clay was a contributor to DNA profiles taken from Jane Doe's right neck area, left neck area, right breast area, left breast area, and left eyebrow area during the SANE exam on August 5, 2021.

10. During a subsequent traffic stop, Clay admitted he had handcuffs in his nightstand. Handcuffs were located inside the nightstand next to the bed in Clay's residence during a search of the residence pursuant to a State of New Mexico District Court search warrant.

11. I obtained Jane Doe's Google and AT&T records, which corroborate that Jane Doe was in El Paso, Texas, as she described in the evening of August 4, 2021. Jane Doe's phone then moved from El Paso, Texas, to Anthony, New Mexico. Her phone was then stationary at Clay's residence in Anthony, New Mexico, before the phone moved back to El Paso.[2]

12. Through my investigation I also learned that Clay repeatedly sexually abused a minor, Jane Doe 2, that Clay had close access to from 2012 to 2014. I also learned that Clay again sexually

---

[2] Jane Doe stated that during the drive to Clay's residence, she dropped her phone in his car and did not have access to it during the time she was at Clay's house. While I was able to obtain records for Jane Doe's phone, it was never recovered after the assault.

4

abused Jane Doe 2 as an adult. Jane Doe 2 disclosed that from the ages of 15 to 17 years old, Clay orally, anally, and vaginally penetrated Jane Doe 2 with his penis. Jane Doe 2 reported the sexual abuse in 2014, but later recanted because of threats made to her by Clay. Jane Doe 2 disclosed that in 2021, when she was an adult, Clay came to her residence and forcefully vaginally raped her. Clay was never criminally charged for any of this conduct.

13. Clay was indicted on November 9, 2022, in the United States District Court of New Mexico, in a two-count indictment for violating 18 U.S. Code §1201(a)(1), Kidnapping and 18 U.S. Code §2421(a), Transportation for Illegal Sexual Activity. Clay was arrested on November 10, 2022, by the FBI.

14. Since his arrest, I have listened to and observed numerous phone calls, text messages, and video chats placed by or received by Clay, while being detained at the Dona Ana County Detention Center (DACDC). I identified Clay as a participant or recipient in these communications. Although I have never met Clay, I know Clay participated in these conversations because I listened to him say multiple times that it is "Steve," which is the name Clay goes by, or answering to the name "Steve." I have also observed numerous videos of Clay, including the police dash cam footage of his encounter with law enforcement on or about February 14, 2022, as well as videos of his arrest on November 10, 2022. During many of his conversations, I also identified a female he commonly communicates with, as "Pati," who I know is Alma Patricia Peinado, Clay's girlfriend. I interviewed Peinado on November 10, 2022 and have spoken to her on multiple occasions. I have also observed Clay communicate with his father, Harold Clay and mother, Rachel Clay, whom he often refers to as mom and dad, via telephone, text messaging, and video chats.

15. In approximately November 2022, I listened to a jail call (ending in 158_924), placed by Clay to his parents. During the call, Clay's parents connected Peinado[3] via three-way calling to the call as well. This was the first time Clay and Peinado spoke after his arrest on these charges. In the call, Clay said to Peinado, "And I can't tell you a lot about this because they record the calls, but… this happened right after we got back from Albuquerque and we had gotten in a fight and you were mad at me and I was hurt…cause I hadn't talked to you in a couple of days… Yeah, but it was that day and I just got so hurt and I kept thinking about what happened in Albuquerque and how I messed up. And I felt like such a failure and… she asked me for a ride. But I didn't kidnap her, and I didn't rape her. I would never do that. So that's messed up babe. I've hurt you so much, I'm so sorry. But please don't give up on me. I need you. I need you."

16. Also in approximately November 2022, I listened to a jail call (ending in 203_269), placed by Clay to his parents. During the call, Clay's parents connected Peinado via three-way calling to the call as well. During the call, Clay said to Peinado, "I'm so sorry for all this. I told you I'd go to dark places when I'm alone. I need you so much. I just wanna be with you. Is that still possible?" Clay later said, "I'm so sorry I've hurt you. I'm so stupid. I'm so sensitive. And when I get hurt I just close up and I go to bad places and dark places…" Clay went on to say, "I was just so alone. All I had was you. You were it. And so whenever something like that happened I, I just wanted to die. And I would pretend like that Monday I pretended I was okay, but I wasn't. I was so hurt. It's not your fault, it's me. I'm the problem. I just don't feel good about myself. You're all I have. That's why you always thought I was so ah…controlling. It

---

[3] Peinado is a native Spanish speaker, and English is her second language. Therefore, sometimes she has difficulty communicating or understanding clearly in English and she and Clay often switch between English and Spanish.

6

wasn't that, I just needed you. With you I felt good. With you I felt safe, I felt happy. But as soon as I left you, the sadness came in. The bad thoughts came in. I just felt so alone in my world. And I didn't know how to tell you. I was scared if I told you you'd lo-I'd lose you. I'm sorry I couldn't tell you. I'm sorry I'm not strong enough. I used to be so strong and now I'm just weak. But with you-when I'm with you I feel so good and so happy. But the moment I leave, I'm just lost. Please forgive me."

17. Also in approximately November 2022, I listened to a jail call (ending in 183_967), placed by Clay to Peinado, in which Peinado told Clay she had to get tested for "sexual diseases." Clay seemed confused by this, so Peinado responded, "Babe, do I have to tell you?" To which Clay responded, "no." Clay proceeded to apologize numerous times and told Peinado that he "used protection" and that it will never happen again. Clay appears to be referring to his cheating on Peinado by engaging in sexual acts with Jane Doe, as he referenced in the above-mentioned calls. Still referring to the sexual acts with Jane Doe, Clay said "I love you. I'm so sorry. I just, just feel so bad about myself sometimes… I start thinking bad thoughts…." Peinado responded, "I know mi amor. I know you didn't do that because you wanted revenge your (unintelligible), I know." Clay went on to say, "I just thought nobody wanted me… And I'm not blaming you, but it's like when…that day on that Monday…I just felt so unwanted and so unloved and so bad. And I just pretended with you that oh it's okay, go, go, it's okay. But inside I felt so bad. So hurt. I felt like…nobody… I just didn't know how to handle my feelings. And work was so stressful and (inaudible) was not doing a good job and my parents weren't really talking to me cause they weren't proud of me for divorcing and Carla wasn't talking with me and I just felt so alone… And I tried to call you but I couldn't explain it well and I would always tell you I was sad and you would say I'm mad and no I was just so sad. And I didn't know how to handle

7

it. I'm so stupid. I never meant to hurt you… I felt so bad. I just wanted to die. I just wanted to die. I loved when I was with you (unintelligible). It was that what I wanted. And I was so glad we had that conversation a couple of weeks ago when you, when you talked to me about being alone. And that was the first time I really got to tell you that I wasn't good at being alone."

18. I observed and listened to a video call dated April 4, 2023, between Clay and Peinado, in which Peinado read portions of a letter out loud that had been written to her by Clay on March 13, 2023, which he mailed to Peinado. During the call, portions of the letter she read out loud included, "I believe it becomes overly sensitive how I felt abandoned. No hope, despair, inadequate, a failure and [I] stopped thinking about how others felt. Especially, by becoming insensitive to how you felt about my behavior. I justified each in my mind as you hurt me first…my mind was spinning with bad thoughts and getting darker…" Based on the specific references to bad and dark thoughts, as he has previously referenced when discussing his state of mind the night of August 4, 2021, I believe Clay wrote in this letter to Peinado details about his state of mind the night of the charged kidnapping and sexual assault.

19. I observed and listened to a video call dated on or about April 10, 2023, between Clay and Peinado. During the call, Peinado told Clay that one of his letters had been cut into several pieces. I observed and listened to the following chat between Clay and Peinado:

Peinado: Why you rip it?
Steve: No, I didn't rip it.
Peinado: *Si*, it's cut, they're cut. Did you cut it?
Steve: Was the envelope open?
Peinado: Eh?
Steve: Was the envelope open?
Peinado: No, it's [inaudible]
Steve: Nah, they opened it.

8

> Peinado: Maybe when I opened it with this [Note: Peinado holds up letter opener.]
>
> Steve: Oh, *ah si* [Steve laughs]
>
> Peinado: But not the other…but there's just three pages. Let me see.
>
> …
>
> Peinado: Oh *si* I think it was me *mi amor* [Peinado holds up a knife she used to cut open his letters]. I have the the three letters
>
> Steve: Ahh [smiling]
>
> Peinado: I [inaudible] the bottom. Note: [smiling]
>
> Steve: *Ay mi amor*
>
> Peinado: [laughing]
>
> Steve: To answer your question, why are they cut? Cause you cut them. You asked why are they cut. Because you cut them. That's [inaudible]
>
> Peinado: [sighs] *aye* babe

20. I observed Clay's demeanor during this conversation with Peinado on April 10, 2023. I observed Clay initially appear happy, cheerful, and talkative with Peinado, as she told him that she received two letters from him today. When Peinado asked Clay why he ripped the letter, Clay's smile suddenly disappeared, and he said that he did not rip it. When Peinado told Clay that the letter was cut [open], Clay appeared visibly concerned as he said, ""they opened it." When Peinado showed Clay the knife she used to open the letter, Clay scratched his beard and face and smiled, as if he realized that Peinado was the one who cut the envelope open. Clay appeared relieved.

21. In many of the video chats I have reviewed since Clay's arrest, I observed Peinado inside her residence, while telling Clay she received his letters and has often read out loud portions of the letters. I have personally been inside Peinado's residence on at least two occasions and can identify rooms and furniture in her home. Therefore, I believe Peinado was in her home while reading the letters from Clay containing information about his state of mind the night charged in the indictment. Based on my training and experience, I know that establishing the criminal

9

intent in a subject's state of mind is critical and statutorily required. I believe Peinado has in her possession, in the PREMISES outlined in this affidavit, letters written by Clay which may provide evidence of Clay's state of mind prior to, during, or after the commission of the crimes for which he has been indicted, namely kidnapping and transportation for illegal sexual activity.

## CONCLUSION

22. Based upon the foregoing, I request that this Court issue the search warrant, pursuant to Federal Rule of Criminal Procedure 41, to allow the search of the PREMISES, more particularly described in Attachment A, and the seizure of the items described in Attachment B.

23. Assistant United States Attorney Matilda McCarthy Villalobos has reviewed and approved this affidavit for a search and seizure warrant.

24. I swear that this information is true and correct to the best of my knowledge.

_____
Armida Maria Macmanus
Special Agent, FBI

_____
UNITED STATES MAGISTRATE JUDGE

Date: 19 April 2023